FILED

March 14, 2019

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 10:06 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MURFREESBORO

| | | |
|---|---|---|
| ROBERT WATSON, | ) | Docket No. 2017-05-0515 |
| Employee, | ) | |
| v. | ) | |
| CATLETT CONSTRUCTION, | ) | State File No. 36534-2017 |
| Employer, | ) | |
| and | ) | |
| AUTO OWNERS INS. CO., | ) | Judge Dale Tipps |
| Carrier. | ) | |

## COMPENSATION HEARING ORDER

This matter came before the Court on March 11, 2019, for a Compensation Hearing. The central issues are: (1) whether Mr. Watson suffered a compensable injury arising primarily out of and in the course and scope of his employment; and (2) if so, whether he is entitled to permanent partial disability benefits, temporary disability benefits, and future medical treatment. For the reasons below, this Court holds that Mr. Watson failed to establish by a preponderance of the evidence that he sustained an injury primarily arising out of and in the course and scope of his employment. Accordingly, the Court holds that he is not entitled to the requested benefits.

### History of Claim

This matter previously came before the Court for two Expedited Hearings. In the first, the Court issued an order denying the requested benefits, finding that Mr. Watson would likely prevail at a hearing on the issues of notice and statute of limitations, but that he was unlikely to prove causation since his medical records did not support his contention that he suffered a discrete, identifiable injury on June 23, 2016. Therefore, he was not likely to prove his injury arose in the course and scope of his job. The Court also found Mr. Watson's medical proof insufficient to establish a likelihood of success at a hearing on the merits. Mr. Watson appealed that order, but the Workers' Compensation Appeals Board affirmed.

1

Mr. Watson then filed a Request for Expedited Hearing (REH), along with three C-32 forms, seeking a decision on the record. The Court denied benefits again. It found that Mr. Watson's evidence was still insufficient to establish that he would likely prove he suffered a work related injury "identifiable by time and place of occurrence." The Appeals Board upheld that order as well.

At the Compensation Hearing, the parties agreed to enter the transcript and exhibits from the Expedited Hearing into evidence.[1] Additional evidence included further testimony from Mr. Watson, a new C-32 Standard Medical Report, a Final Medical Report, and an indexed collection of medical records.

The evidence from the first hearing established that Mr. Watson had a history of back and shoulder problems when he began working as a window installer for Catlett Construction in 2012. Within a few months after starting the job, he developed pain in his low back and left shoulder. Mr. Watson testified he reported this pain to his supervisor, Joel Catlett; however, Mr. Catlett claimed Mr. Watson was an independent contractor not covered under workers' compensation. Mr. Catlett also told Mr. Watson that his problems were "normal wear and tear." Mr. Watson continued working for Catlett and treated with his primary care providers.

Mr. Watson stated that on June 23, 2016, he felt a sharp pain in his left shoulder and low back while lifting and securing a window. He reported this to Mr. Catlett, who again responded that Mr. Watson was not covered and that it was just wear and tear. Again, Mr. Watson continued working and treating on his own. He acknowledged that Mr. Catlett tried to provide him with lighter duty because of his continuing problems.

Tommy Catlett, the owner of Catlett Construction, and Joel Catlett, his son, both denied that Mr. Watson ever notified them of any specific injury occurring on June 23, 2016. Joel said Mr. Watson didn't report any injury until 2017 and, even then, did not mention a particular date. Joel also testified that Mr. Watson often wore a back brace and an ice pack on his left shoulder even before Catlett hired him. Because of these problems, Joel usually did the lifting when working with Mr. Watson.

The parties agreed that Catlett terminated Mr. Watson on May 8, 2017, but they disputed the reason. Mr. Watson contended Catlett fired him because he spoke to a Department of Labor employee who was investigating whether Catlett provided workers' compensation coverage for its employees. Tommy Catlett testified that he did not find out about the investigation until after firing Mr. Watson for a number of reasons, including absenteeism.

---

[1] Except for the testimony of Domingo Gutierrez, which was stricken by agreement.

Medical records show that Mr. Watson saw his primary care provider, PA Teresa Pisani, in November 2013 complaining of left shoulder pain present for a week. He reported doing physical therapy in the past. In February 2016, Mr. Watson reported worsening low-back pain that began three years earlier. PA Pisani noted that Mr. Watson had a chiropractor, and she assessed degenerative disc disease. The next few records show Mr. Watson sought treatment for his right shoulder, but on June 28, 2016, he reported severe low-back pain with an onset "2 days ago." Under "History of Present Illness," PA Pisani noted, "Patient installs windows all day and is literally wearing out his back, he [overdid] at home on Sunday[.]"

Records from Mr. Watson's chiropractor, Mark Hawkins, begin with a visit in February 2016. Among other complaints, Mr. Watson reported left shoulder and lumbar pain that have "stayed the same since the last visit." This notation is essentially unchanged through several visits until the last record in March 2017.

Mr. Watson saw Dr. Christopher Stark on August 5, 2016. Dr. Stark noted a "long history of left shoulder problem[s] going on about a year. He installs windows or doors." He also noted a "1-year history of back problems." After an examination and MRI review, Dr. Stark diagnosed AC arthritis, a labral tear, and rotator cuff tendinitis, as well as lumbar degenerative disc disease.

Dr. John Klekamp saw Mr. Watson in October 2016 for chronic low-back pain. He noted, "Over a year ago, he was installing some windows and was pulling back on a window and had a sharp onset of back pain. Over the last 12 to 16 months, he has had ongoing back discomfort." Dr. Klekamp diagnosed mild lumbar disc degeneration and referred Mr. Watson to pain management, where Mr. Watson received treatment for neck, back, and left shoulder pain. Records from pain management include a notation that the pain began approximately January 2015.

Mr. Watson then saw Dr. Jeffrey Adams in February 2017. He reported injuring his left shoulder seven months earlier when he was carrying a window and felt a sharp pain. Dr. Adams diagnosed transient synovitis and suggested subacromial decompression with AC resection.

Mr. Watson returned to Dr. Stark, who performed shoulder surgery. In a later record, Dr. Stark stated, "There is a question of causation. Mr. Robert Watson hurt his shoulder on 06/23/2016 installing a window. It has been sore since that time that is his cause of the injury and he correlates with the findings at the time of surgery on 08/03/2017."

At the Compensation Hearing, Mr. Watson testified that he installed thousands of heavy windows while working for Catlett. However, he reiterated that he hurt his back

and shoulder while lifting a window on June 23, 2016.  He described a sudden pop in his shoulder and a twinge in his back.

Dr. Stark's February 13, 2019 C-32 and accompanying documents establish that Mr. Watson was unable to work because of his injuries from August 3, 2017, to November 28, 2017, and was on restricted duty until March 6, 2018.  Dr. Stark assigned a six-percent permanent partial impairment rating.  He also indicated that Mr. Watson's employment activity, specifically his "injury June 2016," was primarily responsible for his injury or need for treatment.

Mr. Watson contended at the hearing that he hurt himself on the job.  He acknowledged previous back and shoulder problems but noted that they were much less extensive than Dr. Stark's current diagnosis.  Citing the principle of Occam's razor, Mr. Watson argued that the simplest explanation for this increase in symptoms and physical disorders is the large number of windows and doors he installed while working for Catlett.  He requested that the Court order Catlett to provide additional medical treatment, payment of his past medical bills, and payment of temporary disability benefits.

Catlett countered that Mr. Watson is not entitled to workers' compensation benefits.  It argued that Mr. Watson failed to establish that his condition arose primarily out of and in the course and scope of his work.  Catlett also contended that this claim is barred by the law of the case doctrine.

### Findings of Fact and Conclusions of Law

The following legal principles govern this case.  Mr. Watson has the burden of proof on all essential elements of his claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015).  "[A]t a compensation hearing where the injured employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) ("[T]he employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence.").

Mr. Watson's burden includes proving that his injury arose primarily out of and in the course and scope of the employment.  To meet this burden, he must show his injury was "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Further, he must show, "to a reasonable degree of medical certainty that [the work injury] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14).  Applying

4

these principles to the facts of this case, the Court cannot find that Mr. Watson met this burden.

In the expedited hearing orders, the Court noted that Mr. Watson's evidence did not support his contention that he suffered a discrete, identifiable injury on June 23, 2016. Specifically, the medical records provided inconsistent dates of injury, and no medical history mentioned the incident that allegedly caused his conditions until seven months after it occurred.

The Court continues to find these inconsistencies problematic to proving a work-related incident "identifiable by time and place of occurrence." Mr. Watson's medical records do not support his contention that he suffered a discrete, identifiable injury on June 23, 2016. Family Health Group records show the onset of shoulder pain in November 2013 and a worsening low-back pain that began in approximately 2013. The records state that Mr. Watson reported severe low-back pain on June 28, 2016, but said it began "2 days ago" and that "he overdid" at home on Sunday. The Court notes that two days before the June 28 visit was, in fact, a Sunday. In August 2016, Dr. Stark noted a "long history of left shoulder problem[s] going on about a year" and a "1-year history of back problems." Dr. Klekamp's October 2016 record reflected an onset of back pain "over a year ago." Pain management records include a notation that the pain began approximately January 2015.

Not only are the dates of injury or onset of symptoms in the medical records inconsistent with each other, but also they are at odds with Mr. Watson's claim of a June 23, 2016 injury date. The first mention of any incident resembling the one Mr. Watson described appears over half a year after the alleged date. Dr. Adams' February 2017 note reflects that Mr. Watson was carrying a window at work and felt a sharp pain seven months earlier.[2] This single notation, weighed against the conflicting information in the other records, is insufficient to identify a specific incident by time and place of occurrence.

Mr. Watson provided additional evidence during the Compensation Hearing, and the Court is sympathetic to his belief that his work is the most likely explanation for his injuries. However, his testimony provided no new details supporting his claim of a specific injury date. Further, although Dr. Stark's new C-32 and Final Medical Report specify a June 23, 2016 injury, the Court has no explanation as to how he reached this conclusion when he initially recorded, in August 2016, a "long history of left shoulder problem[s] going on about a year" and a "1-year history of back problems."

This additional evidence, therefore, is still insufficient to find that Mr. Watson

---

[2] Which would have been August 2016, not June.

suffered an injury "identifiable by time and place of occurrence."[3]  Thus, the Court concludes that Mr. Watson failed to establish by a preponderance of the evidence that his injury occurred in the course and scope of his work.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Watson's claim against Catlett Construction and its workers' compensation carrier is dismissed with prejudice against its refiling.

2. Costs of $150.00 are assessed against Catlett Construction under Tennessee Compilation Rules and Regulations 0800-02-21-.07 (2018), to be paid to the Court Clerk within five days of this order becoming final.

3. Catlett Construction shall prepare and file a statistical data form (SD2) within ten business days of the date of this order under Tennessee Code Annotated section 50-6-244.

4. Absent an appeal, this Order shall become final in thirty days.

**ENTERED this the 14th day of March, 2019.**

_____
**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Indexed medical records
2. Dr. Stark's C-32 Standard Form Medical Report
3. Dr. Stark's Form C-30A Final Medical Report
4. Dr. Stark's notarized causation opinion
5. Transcript and Exhibits from February 8, 2018 Expedited Hearing

Technical Record:

1. Petition for Benefit Determination

---

[3] Mr. Watson clearly had prior problems with his shoulder and back, and Dr. Stark's C-32 says Mr. Watson's work was the primary cause not only of a new injury, but also of an aggravation of his preexisting condition.  However, any claim based on aggravation fails for the same reason: Mr. Watson's proof is insufficient to establish a June 23, 2016 incident.

2. Post-Discovery Dispute Certification Notice
3. Parties' Exhibit and Witness Lists
4. Parties' Pre-Compensation Hearing Statements
5. Catlett's Pre-Compensation Hearing Brief

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Compensation Hearing Order was sent to the following recipients by the following methods of service on this the 14th day of March, 2019.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Robert Watson | X | | X | 414 Finley Rd. Marion, NC 28752 robertthumperwatson@gmail.com |
| Michael Haynie, Employer's Attorney | | | X | mhaynie@manierherod.com |

_____

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

7